Stephen BUCKLEY, Plaintiff–Appellee—
Cross–Appellant,

v.

J. Michael FITZSIMMONS, et al.,
Defendants–Appellants—
Cross–Appellees.

Nos. 89–2441, 89–2899 and 89–2900.

United States Court of Appeals,
Seventh Circuit.

Submitted Nov. 15, 1991.

Decided Jan. 2, 1992.

G. Flint Taylor (argued), John L. Stainthorp, Peoples Law Office, Chicago, Ill., for plaintiff-appellee.

Charles E. Hervas, James G. Sotos (argued), James R. Schirott, Michael W. Condon, Phillip A. Luetkehans, Schirott & Hervas, Itasca, Ill., Steve A. Schwarm, Asst. Atty. Gen., Mary P. Wetting, Office of Atty. Gen., Judicial Center, Topeka, Kan., for defendants-appellants.

Before WOOD, JR., and EASTERBROOK, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

PER CURIAM.

The Supreme Court remanded this case to us for reconsideration in light of *Burns v. Reed,* —— U.S. ——, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). —— U.S. ——, 112 S.Ct. 40, 116 L.Ed.2d 19 (1991). *Burns* potentially affects the availability of immunity on two subjects: Fitzsimmons' press conference announcing Buckley's indictment, and the prosecutors' and witnesses' preparations for trial. Buckley contends that we should reconsider our decisions concerning appellate jurisdiction, but his petition for certiorari did not present any jurisdictional question to the Supreme Court. As instructed, we limit our consideration to the effect of *Burns.*

*Burns* holds that prosecutors are not entitled to absolute immunity for advice to police concerning the propriety of hypnosis and probable cause to make an arrest. It also holds that prosecutors are absolutely immune from damages on account of injuries they inflict during the course of an *ex parte* probable cause hearing that led to the issuance of a search warrant. Our case is not directly governed by *Burns.* Indeed, our initial decision recognized that *Burns* was awaiting decision by the Supreme Court, and we observed that the subjects are distinct. 919 F.2d 1230, 1239, 1242 (7th Cir.1990). Still, the reasoning of a case may reach beyond its holding, and the Court has invited us to revisit the subject.

First we take up the preparation for trial. Law enforcement officials asked four persons to determine whether Buckley's shoe made the bootprint found on the Nicaricos' door. One said no; a second said maybe; a third said probably, and the fourth said yes. All but the one who said no testified against Buckley, who seeks damages from all three. He also seeks damages from the prosecutors for their "supervision of and participation in a year long pre-arrest and pre-indictment investigation". Our initial opinion held that both the witnesses and the prosecutors are entitled to absolute immunity for these activities, save to the extent they independently violated Buckley's rights. (We remanded for further proceedings on Buckley's claim that the prosecutors coerced him to give pretrial statements.) According to *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), and *Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983), both prosecutors and witnesses are entitled to absolute immunity for what happens in court. We remarked: "It would be a hollow immunity if the aggrieved party could turn around and say, in effect: 'True, your *delivery* of bad testimony is immunized, but preparing to deliver that testimony is not, so I can litigate the substance of your testimony.'" 919 F.2d at 1245.

Nothing in *Burns* undermines that holding. It would be a hoax to proclaim immunity for presentation of testimony in court if the person aggrieved by that testimony may attack its preparation. Immunity is not limited to *un*prepared events at trial! Allowing evasion through litigation about preparation for trial would make no more sense than undermining judicial immunity by entertaining a suit against the law clerk who participated in the preparation of the opinion. See *Mitchell v. McBryde,* 944 F.2d 229 (5th Cir.1991); *Oliva v. Heller,* 839 F.2d 37 (2d Cir.1988). Immunities cover not only the core functions sought to be protected but also normal preparatory steps. *Eastland v. United States Servicemen's Fund,* 421 U.S. 491, 503–07, 95 S.Ct. 1813, 1821–23, 44 L.Ed.2d 324 (1975).

Although *Burns* distinguishes "prosecutorial" activities from "investigative" ones, it is word play to call prosecutors' endeav-

ors in asking experts for assistance "investigative" in the way hypnotizing or arresting suspects is. Talking with (willing) experts is trial preparation, no different from putting evidence under a microscope in a laboratory. (Interrogating Buckley is a different matter, which is why we directed further proceedings on claims about the prosecutors' treatment of him.) Slapping the label "conspiracy" on the process, as Buckley does, adds nothing.

■ *Imbler* said it straight: "[T]he duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution". 424 U.S. at 431 n. 33, 96 S.Ct. at 995 n. 33. *Burns* did not express a different view; instead it quoted this language with approval. 111 S.Ct. at 1941–42. What goes for prosecutors goes for witnesses too. We therefore reiterate the conclusion of our initial decision: unless the act of gathering and evaluating the evidence independently violates someone's rights (as, for example, by seizing persons or things in violation of the fourth amendment), both witnesses and prosecutors are entitled to the same immunity they possess when they present the evidence in court. See also *Millspaugh v. Wabash County Department of Public Welfare*, 937 F.2d 1172, 1175 (7th Cir.1991), concluding that *Burns* "reinforces *Buckley's* approach."

*Burns* bears more strongly on Buckley's claim arising out of the press conference. Like the advice to the police in *Burns,* the press conference took place out of court and was not part of preparation for trial. The prosecutor acted as a public official informing residents about the activities of his office—and perhaps preparing for an election campaign—rather than as an advocate. It does not follow, however, that the press conference should be assimilated to advising police to arrest a suspect, the subject of *Burns.* An arrest causes injury whether or not a prosecution ensues. So too a press conference may cause injury no matter what happens later—but the injury in question is defamation, which under *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), is not a constitution-

al wrong. See also *Siegert v. Gilley,* —— U.S. ——, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). Fitzsimmons does not need immunity to defeat a claim of defamation, because Buckley has none. (Buckley contends that our original decision misapplies *Paul.* But this topic was not raised in the Supreme Court—the petition for certiorari does not cite *Paul*—and so is not encompassed within the remand.)

■ According to Buckley, the press conference violated his rights because the publicity deprived him of a fair bail hearing and trial. Buckley protests, in other words, what happened *in court*—that the judge erred in refusing to dismiss the prosecution on account of prejudicial publicity, or at least to enlarge him pending trial. Because the sting (apart from the defamation) depends on judicial action, *Imbler* confers immunity. So we remarked in *Millspaugh,* 937 F.2d at 1175: "the dividing line between absolute and qualified immunity is whether the injury depends on the judicial decision. If there would be no loss but for the judge's acts, then the prosecutor or witness who induces the judge to act has absolute immunity.... *Burns* held a lawyer absolutely immune from liability for acts while representing the state during a probable cause hearing but only qualifiedly immune for giving legal advice to the police; the principal distinction was that the advice (and the officers' acts in reliance on that advice) could cause injury without the mediation of a judge." Fitzsimmons' press conference could cause no *actionable* harm without the mediation of a judge. The defamation aspect of Buckley's claim fails under *Paul* and *Siegert,* the remainder under *Imbler.*

*Burns* identifies three considerations governing the scope of prosecutorial immunity: the common law in 1871 (when Congress enacted 42 U.S.C. § 1983), the risk of vexatious litigation if immunity is unavailable, and the role of the judicial process in controlling the prosecutor if damages are unavailable. The first of these favors Buckley, for common law immunity did not extend to press conferences. This may be an artifact: if courts do not recognize par-

ticular conduct as actionable, they have no reason to discuss immunity. No court would have thought a prosecutor's announcement of an indictment actionable in the first place in the nineteenth century. Justice Scalia, concurring in *Burns,* maintained that immunity at common law is a necessary condition for immunity in an action under § 1983. 111 S.Ct. at 1945. This approach, if adopted, would sever the link between immunities in § 1983 actions and those in *Bivens* actions established by cases such as *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), and *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Liability directly under the Constitution is a modern development, and it is accordingly hard (maybe impossible) to find corresponding immunities. So, too, it is hard to find immunities corresponding to recent enlargements in substantive liability. Cf. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* — U.S. —, 111 S.Ct. 2773, 2783, 115 L.Ed.2d 321 (1991) (Scalia, J., concurring) (observing that although state law ordinarily supplies statutes of limitations, federal law properly may be matched to newly minted theories of liability). The majority did not stop with the common law in *Burns.*

The second and third considerations favor Fitzsimmons. Buckley wants to use the press conference as the fulcrum to attack the substance of the charges laid against him, even though their presentation in court cannot be the basis of damages. So although the concern about vexatious litigation is limited to "actions that are connected with the prosecutor's role in judicial proceedings", *Burns,* 111 S.Ct. at 1943, Buckley places that role (like the prosecution itself) in question. As for the third consideration: this was at the core of our original decision. We relied particular-

ly on this language from *Butz,* 438 U.S. at 512, 98 S.Ct. at 2914: "[S]afeguards built into the judicial process tend to reduce the need for private damages actions as a means of controlling unconstitutional conduct." 919 F.2d at 1241. *Burns* quoted the same language with approval, 111 S.Ct. at 1942, and called the judicial process "one of the most important checks", *id.* at 1944. As we have been at pains to establish, Buckley had the benefit of the judicial process. If the press conference created prejudicial publicity, the injury occurred because of judicial action. It is only because the judge denied Buckley's application for release before trial and refused to dismiss the indictment that he suffered the loss for which he seeks damages from Fitzsimmons.

Buckley spent three years in jail. He craves vindication and redress. Yet for all counsel's inventiveness, it is apparent that he challenges the prosecution itself. *Imbler* reflects a judgment that prosecutors should be free to press criminal charges without fear that prosecuting the wrong person, or the right person in the wrong way, will lead to financial ruin.† If, as Buckley insists, *Imbler* was wrongly decided, he should press that argument in the only forum that can entertain it.

Buckley presents claims against governmental bodies that do not possess immunity and against the prosecutors who interrogated him; the former we have not addressed, and the latter we have remanded for further proceedings. Buckley's memorandum filed in this court after remand asserts that one or more of the assistant state's attorneys actually arrested him. Had we perceived on the original appeal that Buckley was making such a claim, we would have included it among the subjects remanded to the district court. The ratio-

---

† State and local governments can prevent this effect for themselves by indemnifying their officers, and many do so. Indemnification enables public officials to set their personal concerns aside, assures adequate compensation of those the state has injured, and induces the government to exercise better control over those who exercise public power. Yet not all governmental bodies indemnify their employees, and the same principles of immunity apply to all. If the promise of indemnity were to enlarge public officers' liability (and thus the cost of the indemnity), states would be inclined to jettison or curtail their programs. Thus we approach the subject, as the Supreme Court consistently does, on the assumption that the defendants must pay any awards personally.

nale behind Part III.C of our opinion, 919 F.2d at 1243–44, applies equally to a claim of arrest without probable cause. See also *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); *Millspaugh,* 937 F.2d at 1176. We modify our judgment to direct the district court to explore the allegation that the persons who arrested him lacked probable cause. All other claims are barred by immunity, and we reenter our original judgment except to the extent we have described.

FAIRCHILD, Senior Circuit Judge, dissenting in part:

I adhere to my earlier dissent, concluding there was no absolute immunity for the prosecutor's press conference. *Buckley,* 919 F.2d at 1245.

Going on from there, the Supreme Court in *Burns* seems to draw a line between "conduct closely related to the judicial process," *Burns,* 111 S.Ct. at 1943, and conduct in the role of "administrator or investigative officer." *Id.* at 1942. As to the latter functions, the prosecutor has only the protection of qualified immunity. The *Burns* Court seems to imply that the increased availability of the defense of qualified immunity is a reason for not expanding, and, perhaps, construing narrowly the application of absolute immunity for prosecutors. *Id.* at 1944.

My brethren draw the line between investigation and "preparation," evidently deeming preparation for trial sufficiently close to the judicial process to entitle the prosecutor to absolute immunity. I agree that a prudent prosecutor will interview witnesses and test other evidence brought to him by investigators in advance of trial. He may well ask for further investigation of areas of a case. I can agree that such "preparation" should fall on the absolute immunity side of the line. Plaintiff claims, however, that Mr. Fitzsimmons played a very aggressive role in seeking favorable expert evidence linking the incriminating boot print to plaintiff, and in "supervision of and participation in a year long pre-arrest and pre-indictment investigation." I am unable to conclude as a matter of law

that this alleged conduct falls on the side of the line to which the *Burns* Court ascribed absolute immunity.