Stephen BUCKLEY, Plaintiff–Appellee, Cross–Appellant,

v.

J. Michael FITZSIMMONS, et al., Defendants–Appellants, Cross–Appellees.

Nos. 89–2441, 89–2899 and 89–2900.

United States Court of Appeals, Seventh Circuit.

Submitted Nov. 15, 1993.

Decided April 6, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied June 7, 1994.

G. Flint Taylor, John L. Stainthorp, Peoples Law Office, Chicago, IL, for Stephen Buckley.

Charles E. Hervas, James G. Sotos, Michael W. Condon, Hervas, Sotos & Condon, Itasca, IL, Steve A. Schwarm, Asst. Atty. Gen., Topeka, KS, James R. Schirott, Phillip A. Luetkehans, Schirott & Luetkehans, Itasca, IL, for J. Michael Fitzsimmons.

Charles E. Hervas, James G. Sotos, Michael W. Condon, Hervas, Sotos & Condon, Itasca, IL, Steve A. Schwarm, Asst. Atty. Gen., Topeka, KS, James R. Schirott, Phillip A. Luetkehans, Schirott & Luetkehans, Itasca, IL, for Thomas Knight, Patrick King, James E. Ryan and Robert Kilander.

Charles E. Hervas, James G. Sotos, Michael W. Condon, Hervas, Sotos & Condon, Itasca, IL, Mary P. Wetting, Office of the Attorney General, Topeka, KS, James R. Schirott, Schirott & Luetkehans, Itasca, IL, for County of DuPage.

Before FAIRCHILD, WOOD, Jr., and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

The Supreme Court returned this case to us with these instructions:

> In his complaint, petitioner also charged that the prosecutors violated his rights under the Due Process Clause through extraction of statements implicating him by coercing two witnesses and paying them money. App. 9–11, 19. The precise contours of these claims are unclear, and they were not addressed below; we leave them to be passed on in the first instance by the Court of Appeals on remand.

— U.S. ———— ——, 113 S.Ct. 2606, 2619, 125 L.Ed.2d 209 (1993). The Court also remanded more generally "for further proceedings consistent with this opinion." *Ibid.*

The Supreme Court's opinion, and two prior opinions of this court, 919 F.2d 1230 (1990), 952 F.2d 965 (1992), permit us to turn to the legal issues without recapitulating the facts and history of the litigation.

Circuit Rule 54 requires the parties to file statements of position following remands from the Supreme Court. Buckley's statement did not mention the issue that Court instructed us to address; instead he asked us to remand the case for trial without further ado. Such a remand would be inappropriate, however, not only because of the Court's instructions but also because the defendants have yet to answer the complaint, and defenses other than absolute immunity remain to be considered. Defendants' claim of absolute immunity took precedence. Both this court and the Supreme Court assumed that defendants violated the Constitution and asked whether they were functioning as prosecutors in a criminal case, and thus immune, at the time of the acts. See — U.S. at ——, —— n. 5, 113 S.Ct. at 2609, 2616 n. 5. Other issues now come to the fore. Are the defendants entitled to qualified immunity given the state of the law when they acted? Answering this question may require the court to determine whether the complaint states a claim on which relief may be granted. *Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *Triad Associates, Inc. v. Robinson*, 10 F.3d 492 (7th Cir.1993). Justice Scalia stated that many of the claims "are probably not actionable under § 1983, and so may be dismissed at the pleading stage without regard to immunity". — U.S. at ——, 113 S.Ct. at 2620 (concurring opinion, particularly discussing the false evidence claim). Justice Kennedy, writing for himself and three others, implied agreement. *Id.* — U.S. at ——, 113 S.Ct. at 2622 ("[I]t appears that the only constitutional violations these actions are alleged to have caused occurred within the judicial process."). Such expressions by a majority of the Supreme Court made it inappropriate to remand for trial without any decision on the legal sufficiency of the complaint and the scope of qualified immunity. We therefore called for new briefs:

The parties ... should spell out the legal foundation for the claim the Supreme Court mentioned. Moreover, because the defendants may be entitled to qualified immunity on the two claims on which the Supreme Court held that they lack absolute immunity (the bootprint and press conference claims), and because opinions filed by several Justices question the legal sufficiency of these two claims, *Siegert* suggests that the parties should address the legal bases of these two contentions and the possibility of qualified immunity. Briefs and replies have been received.

■■■ Buckley protests that any issues other than absolute immunity are outside our appellate jurisdiction. As our first opinion discusses at some length, 919 F.2d at 1236–39, appellate jurisdiction of the prosecutor's appeal concerning the press conference depends on the collateral order doctrine, elaborated in *Nixon v. Fitzgerald,* 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982). That decision permits a public official to take an interlocutory appeal to assert both absolute and qualified immunity, and *Siegert* establishes that the best way to resolve a claim of qualified immunity may be to hold that a particular right was not "clearly established" at the time of the defendant's acts because it was and is not "established" at all. Buckley's cross-appeal depends not on *Nixon* but on a partial final judgment entered under Fed.R.Civ.P. 54(b) absolving some defendants on all claims. A litigant may defend his judgment on appeal with arguments in addition to those that persuaded the district court. *Massachusetts Mutual Life Insurance Co. v. Ludwig,* 426 U.S. 479, 96 S.Ct. 2158, 48 L.Ed.2d 784 (1976). Our jurisdiction is secure; the right question is whether the extent of qualified immunity is ripe for decision.

■■■ Assuredly the defense has not been *waived.* Although the case is five years old, defendants have yet to answer the complaint. Motions preceding the answer led to the decisions on absolute immunity. If we were to return the case to the district court, defendants could assert qualified immunity in their answer and move to dismiss under Rule 12(b)(6). If either motion were granted,

Buckley would take another appeal; if a motion based on immunity were denied, defendants could appeal under *Nixon.* In either event, the case would come back to this panel like a yo-yo under this court's Operating Procedure 6(b). (This would not be a successive appeal proscribed by *Abel v. Miller,* 904 F.2d 394 (7th Cir.1990), for defendants prevailed in the district court on all claims other than the press conference, and this case is principally here on Buckley's appeal.) Time would be lost, and nothing gained, by these additional steps.

■■■ Although qualified immunity is an affirmative defense, *Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980), no principle forbids a court to notice that such a defense exists, is bound to be raised, and is certain to succeed when raised. So much is established for res judicata and the statute of limitations, two other affirmative defenses. *Salahuddin v. Jones,* 992 F.2d 447 (2d Cir.1993); *Russell v. SunAmerica Securities, Inc.,* 962 F.2d 1169, 1172 (5th Cir.1992); *Fassett v. Delta Kappa Epsilon,* 807 F.2d 1150, 1156 (3d Cir.1986); cf. *United States National Bank of Oregon v. Independent Insurance Agents of America, Inc.,* ── U.S. ──, ── ── ──, 113 S.Ct. 2173, 2177–79, 124 L.Ed.2d 402 (1993) (discussing circumstances under which a court of appeals may consider issues not presented by the parties); *Tregenza v. Great American Communications Co.,* 12 F.3d 717, 718 (7th Cir. 1993) ("Of course if [the plaintiff] pleads facts that show that his suit is time-barred or otherwise without merit, he has pleaded himself out of court."). Defendants inform us that they want the benefit of qualified immunity. Because this is a legal defense, we would not defer to the district court's resolution. Courts should resolve immunity issues at the earliest possible time, preferably before allowing discovery. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Elliott v. Thomas,* 937 F.2d 338, 344–45 (7th Cir.1991). That time is now. The parties have briefed the questions in response to our order, and we also have the benefit of the Solicitor General's brief on these matters for the United States as *amicus curiae* in the Supreme

Court. Instead of dragging out this litigation, already unduly extended, we shall resolve as much of it as we can.

 The Supreme Court found "unclear" the "precise contours" of Buckley's claim that the prosecutors violated the due process clause "through. extraction of statements implicating him by coercing two witnesses and paying them money." ── U.S. at ──, 113 S.Ct. at 2619. It evidently expected Buckley to elaborate on remand; so did we. Instead, Buckley simply referred us to the very paragraphs of the complaint that perplexed the Justices. Despite this uncooperative stance, Buckley has supplied enough information to establish two things: (i) the prosecutors are not entitled to absolute immunity for these events, which (ii) do not violate any of his constitutional rights. The Supreme Court established a temporal line for absolute immunity: a prosecutor is not functioning as an advocate, and hence does not have absolute immunity, "before he has probable cause to have anyone arrested." ── U.S. at ──, 113 S.Ct. at 2616. According to the complaint, the interrogation and payments took place early in the investigation, while the prosecutors were just beginning to piece events together. Thus there cannot be absolute immunity. But qualified immunity is available unless the acts violated "clearly established" constitutional norms. *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738; *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). What this complaint alleges does not state a claim under the Constitution, let alone suggest a violation of clearly established rights.

Here is the gist of the allegations, in the language of Buckley's brief (footnote and citations to the record omitted):

> The relevant portions of the complaint allege several separate acts of witness interrogation and coercion which occurred in the early stages of the investigation, including the repeated interrogation of [Alex] Hernandez [one of Buckley's two co-defendants], which led him to give obviously false statements which on their face inculpated Buckley; the use of reward money to coerce further false statements from Hernandez which again inculpated

Buckley; and the interrogation of [Rolando] Cruz [the other co-defendant] and purchase of false inculpatory statements from him.

Buckley alleges, in other words, that the prosecutors repeatedly interrogated two other persons, that the prosecutors paid them for statements inculpating him, that during the interrogations the prosecutors "coerced" them to finger him, and that the accusations Cruz and Hernandez leveled against him are "obviously false".

 The exchange of money for information may be a regrettable way of securing evidence, but it is common. So too with promises to go easy (the complaint alleges that a prosecutor implied that Cruz and Hernandez might escape the death penalty by talking freely). Buckley does not cite any case holding that this practice violates the Constitution. *Concealing* the payments at trial would have violated his rights; a defendant is entitled to know what the prosecutor paid for a statement (whether in cash or in lenience and related promises) so that he may expose to the jury the witness's shortcomings and bias. *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). But Buckley does not allege concealment at trial, which would in any event be comfortably within the scope of absolute prosecutorial immunity under *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). His contention that the payments themselves violate the due process clause does not state a claim on which relief may be granted.

 Coercing witnesses to speak, rather than loosening their tongues by promises of reward, is a genuine constitutional wrong, but the persons aggrieved would be Cruz and Hernandez rather than Buckley. Overbearing tactics violate the right of the person being interrogated to be free from coercion. Buckley cannot complain that the prosecutors may have twisted Cruz's arm, any more than he can collect damages because they failed to read Cruz *Miranda* warnings (see 919 F.2d at 1244) or searched Cruz's house without a warrant. *Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65

L.Ed.2d 633 (1980); *United States v. Payner*, 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980); *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). Rights personal to their holders may not be enforced by third parties. Let us suppose the prosecutors put Cruz on the rack, tortured him until he named Buckley as his confederate, and then put the transcript in a drawer, or framed it and hung it on the wall but took no other step, or began a prosecution but did not introduce the statement. Could Buckley collect damages under the Constitution? Surely not; Cruz himself would be the only victim. Cf. *Bowen v. Roy*, 476 U.S. 693, 699–701, 106 S.Ct. 2147, 2151–2153, 90 L.Ed.2d 735 (1986).

■ Confessions wrung out of their makers may be less reliable than voluntary confessions, so that using one person's coerced confession at another's trial violates his rights under the due process clause. See *Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (citing cases). Buckley alleges that the Cruz and Hernandez statements are unreliable, indeed that they are "obviously false". The right to keep an unreliable coerced confession out of evidence can be conceived as a form of third-party enforcement, one distinction between the law of coerced confessions and the exclusionary rule under the fourth amendment. Notice, however, the consequences of putting the proposition this way. For if the constitutional entitlement is a right to prevent use of the confession at trial (or before the grand jury), then absolute immunity under *Imbler* defeats Buckley's claim. *Obtaining* the confession is not covered by immunity but does not violate any of Buckley's rights; *using* the confession could violate Buckley's rights but would be covered by absolute immunity. Because the "reliability" aspect of coerced-confession law is an element of trial practice—a conclusion that formed the centerpiece of the Court's conclusion in *Fulminante* that admission of coerced confessions may be harmless error, see 499 U.S. at 306–12, 111 S.Ct. at 1262–66—the only way Buckley can establish a violation of the Constitution is to plead himself out of court. Prosecutors are entitled to absolute immunity for actions as advocates before the grand jury and at trial even if they present unreliable or wholly fictitious proofs. —— U.S. —— n. 3, 113 S.Ct. at 2612 n. 3 (approving, or at least not disturbing, our prior holding to that effect). See also *Burns v. Reed*, 500 U.S. 478, 489–90 & n. 6, 111 S.Ct. 1934, 1941 & n. 6, 114 L.Ed.2d 547 (1991).

Buckley's brief after remand states that "[t]he legal bases for plaintiff's claims with regard to the coercion of witnesses are essentially identical to those alleged with regard to the manufacture of the boot print evidence". We agree. Although Buckley's briefs refer to the "manufacture" of evidence, the complaint itself makes it clear that the objection is to shopping among potential expert witnesses for favorable testimony. The Supreme Court described the claim this way:

> After three separate studies by experts from the DuPage County Crime Lab, the Illinois Department of Law Enforcement, and the Kansas Bureau of Identification, all of whom were unable to make a reliable connection between the print [on the victim's door] and a pair of boots that [Buckley] had voluntarily supplied, [the prosecutors] obtained a "positive identification" from one Louise Robbins, an anthropologist in North Carolina who was allegedly well known for her willingness to fabricate unreliable expert testimony.

—— U.S. at ——, 113 S.Ct. at 2610. Robbins was to testify during the trial that no one but Buckley could have left the bootprint on the door—and that she could identify the wearer of a shoe with certainty even if she had only prints made with different shoes. The Court concluded that because the prosecutors obtained Robbins's assessment of the bootprint during the investigatory rather than prosecutorial stage of the case, they are not entitled to absolute prosecutorial immunity, disagreeing with our conclusion that immunity was available because only Robbins's testimony in court could have injured Buckley. *Id.* —— U.S. at —— – ——, 113 S.Ct. at 2615–17. But the Court warned that this did not imply that Buckley has a good claim on the merits: "The location of the injury may be relevant to the question whether a complaint has adequately alleged a cause of action for dam-

ages", *id.* —— U.S. at ——, 113 S.Ct. at 2615. Justice Scalia's concurrence, *id.* —— U.S. at ——, 113 S.Ct. at 2620, and the dissenting opinion joined by four Justices, *id.* —— U.S. at ——, 113 S.Ct. at 2622, strongly imply that the location of the injury is dispositive; we hold that it is, for the bootprint evidence and the allegedly coerced confessions alike.

 Neither shopping for a favorable witness nor hiring a practitioner of junk science is actionable, although it may lead to devastating cross-examination if the judge permits the witness to testify. Cf. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* —— U.S. ——, —— – ——, 113 S.Ct. 2786, 2796–99, 125 L.Ed.2d 469 (1993). The prosecutor's discussions with Robbins did not injure Buckley; only the decision to file charges and proffer her testimony, coupled with the judge's decision that she was qualified to offer expert testimony, did so. See *Mooney v. Holohan,* 294 U.S. 103, 112, 55 S.Ct. 340, 341, 79 L.Ed. 791 (1935) (holding that the *use* of fabricated evidence at trial violates the Constitution without implying that the fabrication is an independent problem). Just as there is no common law tort without injury, *Niehus v. Liberio,* 973 F.2d 526, 531–32 (7th Cir.1992) (collecting cases), there is no constitutional tort without injury. *Codd v. Velger,* 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977); cf. *Leeke v. Timmerman,* 454 U.S. 83, 102 S.Ct. 69, 70 L.Ed.2d 65 (1981); *Ashcroft v. Mattis,* 431 U.S. 171, 97 S.Ct. 1739, 52 L.Ed.2d 219 (1977). We are conscious of cases such as *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), holding that failure to use the procedures the due process clause requires may lead to an award of nominal damages, even if a properly conducted hearing would have come out the same way. See also *Memphis Community School District v. Stachura,* 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986). These cases stand for the principle that a denial of procedural rights is a form of injury. Details of the hearing directly affect the subject of the governmental action. Discussions between Robbins and the prosecutors, by contrast, took place out of Buckley's presence; he was made aware of them only by later developments, such as the prosecutors' decision to bring charges and Robbins's testimony in the trial. A person aggrieved by proposed expert testimony may ask the judge to exclude it, and may appeal from an adverse judgment, but may not collect damages from the lawyers who recruited the witness.[1]

 Buckley reminds us, citing *Jones v. Chicago,* 856 F.2d 985 (7th Cir.1988), that constitutional wrongs completed out of court are actionable even if they lead to immunized acts. Immunity for prosecutorial deeds does not whitewash wrongs completed during the investigation. Indeed so; our prior opinions reiterated this principle, which underlies the remand of several issues. 919 F.2d at 1244–45; 952 F.2d at 968–69. It is equally true, however, that events not themselves supporting recovery under § 1983 do not become actionable because they lead to injurious acts for which the defendants possess absolute immunity. *Jones* discusses both parts of this proposition. Jones alleged that the police had fabricated evidence, deceiving the prosecutor into filing criminal charges that the prosecutor never would have initiated had he known the truth. A prosecutor would have

---

1. Robbins was a controversial witness. At least one court held that her testimony, based on a methodology that other physical anthropologists did not approve, should not have been admitted. *People v. Ferguson,* 172 Ill.App.3d 1, 122 Ill.Dec. 266, 269–73, 526 N.E.2d 525, 528–32 (2d Dist. 1988) (excluded under the approach of *Frye v. United States,* 293 F. 1013 (D.C.Cir.1923), because no other anthropologist used Robbins's method or supported her conclusions). Her claims drew adverse notice. See Blake Fleetwood, *From the People Who Brought You the Twinkie Defense: The Rise of the Expert Witness Industry,* 19 Washington Monthly 33 (1987) (reporting that an FBI evidence specialist thought Robbins's technique "ridiculous" and that another anthropologist recalled that, at a dig site in Africa, Robbins had been unable to distinguish the footprints of prehistoric humans from those of antelopes). But several courts held, despite vigorous contests from defendants, that she was qualified to give expert testimony of the kind she offered in Buckley's trial. *United States v. Ferri,* 778 F.2d 985, 988–89 (3d Cir.1985); *People v. Knights,* 166 Cal.App.3d 46, 52–53, 212 Cal.Rptr. 307, 311–12 (1985); *State v. Bullard,* 312 N.C. 129, 322 S.E.2d 370, 374–78 (1984); *State v. Johnston,* 1986 WL 8799, No. 412 (Ohio App. 4th Dist. Aug. 6, 1986). None of the many courts that considered Robbins's testimony suggested that the prosecutor committed misconduct by seeking her out and proffering her conclusions.

received absolute immunity, see 856 F.2d at 993, but the police who bilked the prosecutor were liable for the injury their deceit caused. Things would be different, we implied, if the prosecutors had known the truth and proceeded anyway, or if the prosecutors themselves had concocted the evidence, for then the immunized prosecutorial decisions would be the cause of the injury. 856 F.2d at 993–94 (collecting other cases).[2] See also *Robinson v. Maruffi,* 895 F.2d 649, 655–56 (10th Cir.1990); *Barts v. Joyner,* 865 F.2d 1187, 1195–97 (11th Cir.1989).

■ Justice Scalia remarked: "[Buckley] cites, and I am aware of, no authority for the proposition that the mere preparation of false evidence, as opposed to its use in a fashion that deprives someone of a fair trial or otherwise harms him, violates the Constitution." —— U.S. at ——, 113 S.Ct. at 2620 (concurring opinion). Buckley did not supply the omitted citations on remand, and we could not find any such cases on our own. So far as we can tell, no court has ever held a prosecutor liable for seeking out and hiring a witness, even one "well known for her willingness to fabricate unreliable expert testimony." Cf. *House v. Belford,* 956 F.2d 711, 720 (7th Cir.1992). Qualified immunity does not permit us to recognize such a right in this litigation, even if we were persuaded (which we are not) that such an entitlement should be created. And what we have said about Robbins is equally true with respect to Buckley's contention that the prosecutors "suppressed" a favorable evaluation of the bootprint by a sergeant of the DuPage County Sheriff's Office (i.e., that they violated their duties under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)) and that they induced two experts to give testimony more damaging to Buckley than these experts' initial notes and reports suggested. These wrongs, if they are wrongs at all, occurred at trial (*Brady* does not require

pretrial disclosure, see *United States v. Xheka,* 704 F.2d 974, 981 (7th Cir.1983); *United States v. Ziperstein,* 601 F.2d 281, 291 (7th Cir.1979)) and do not support an award of damages.

■ Pretty much the same analysis applies to the press conference at which State's Attorney Fitzsimmons announced the indictment, with the important qualification that slander during a press conference may well be actionable under state law. Slander is not, however, a constitutional tort, because a person's interest in his reputation is neither "liberty" nor "property" for purposes of the due process clause. *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Siegert,* 500 U.S. at 233, 111 S.Ct. at 1794. Buckley so conceded in the Supreme Court (Pet.Br. 39). Injury to reputation may *produce* a loss of liberty or property—for example, the loss of employment. A person affected by the defamation then may protest that loss; but, as *Siegert* observes, the redressable (constitutional) injury is the loss of the identifiable liberty or property, not the slander as such. Buckley unquestionably suffered a loss of liberty when he was arrested and imprisoned pending trial. *United States v. Salerno,* 481 U.S. 739, 746–52, 107 S.Ct. 2095, 2101–04, 95 L.Ed.2d 697 (1987). He did not get out until Robbins died and the case against him, which was dependent on her testimony, crumbled. Identifying the arrest and imprisonment as the loss of liberty does not assist Buckley, however, because Fitzsimmons has absolute immunity from damages for these events. We anticipate the response that this separation between the defamation and the loss is artificial; if one causes the other, why should it not be actionable? The answer is that Buckley himself persuaded the Supreme Court to adopt a strict separation between the prosecutor's role as advocate and the ancillary events

2. There is a potential complication concerning State's Attorney Fitzsimmons, who supervised the investigation but left office before the trial. If Fitzsimmons not only violated Buckley's rights during the investigation but also deceived his successor James Ryan about the true state of affairs, he could be liable under the rationale of *Jones.* We need not explore this question, however, because Fitzsimmons is participating on this appeal only as the appellant on the press conference claim. Our first appeal dismissed Buckley's appeal to the extent he sought to raise other issues concerning Fitzsimmons. 919 F.2d at 1238–39. We therefore leave to the district court the initial treatment of questions concerning the transition between Fitzsimmons and Ryan.

(such as press conferences) surrounding the prosecution. It would be incongruous to treat the press conference and the prosecution as distinct for purposes of immunity but not for purposes of defining the actionable wrong. To put this slightly differently, a plaintiff who uses a "stigma plus" approach to avoid *Paul* and *Siegert* must identify a "plus" other than the indictment, trial, and related events for which the defendants possess absolute prosecutorial immunity. Buckley has not identified a "plus" for which Fitzsimmons is potentially liable.

According to the complaint, the grand jury indicted Buckley before the prosecutor gave his press conference. We know from *Albright v. Oliver*, —— U.S. ——, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), that the institution of a prosecution is not an independent constitutional tort; at all events the indictment cannot be thought a consequence of the press conference. Buckley believes that the accusations made at the press conference aroused the community against him, increasing the chance that the judge would order him imprisoned pending trial and reducing the chance of acquittal at trial. Yet the press conference did not itself cause adverse decisions in court. Only the prosecutor's advocacy and the judge's decisions produced the detention and trial. The injury came about because Fitzsimmons persuaded the judge to detain Buckley and because his successor in office continued the prosecution. That is advocacy, pure and simple.

More than immunity bars a claim of this character: the complaint does not identify any constitutional problem in the way the state conducted the detention hearing and trial. The indictment, untainted by the press conference, was enough by itself to support the proceedings; a probable-cause hearing under *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), is unnecessary after an indictment. *Baker v. McCollan*, 443 U.S. 137, 142–43, 99 S.Ct. 2689, 2693–94, 61 L.Ed.2d 433 (1979). Buckley lost some of his liberty when the judge refused to release him on bail pending trial, but he does not allege that the judge received improper evidence or otherwise violated the Constitution during that hearing. He received all the process that was due; and at all events the prosecutor cannot be made to pay damages for what happens in court. Buckley has not identified any case in which a prosecutor was ordered to pay damages for statements made at a press conference, let alone to pay damages measured (as Buckley proposes) by the value of the liberty lost as a result of the judicial decision to hold him pending trial. See *Latimore v. Widseth*, 7 F.3d 709, 712–13 (8th Cir.1993) (en banc). The closest approximation is *Hampton v. Hanrahan*, 600 F.2d 600, 632–33 (7th Cir.1979), reversed in part on other grounds, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980), but for reasons explained in our first encounter with this case, 919 F.2d at 1243, *Hampton* does not assist Buckley. *Hampton* is limited to pretrial prejudice; Buckley is claiming a loss of liberty via the decisions of the judge in the bail hearing and at trial. That aspect of our opinion, like most of our other conclusions, was left undisturbed by the Supreme Court. —— U.S. ——, ——, n. 2, —— n. 3, ——, 113 S.Ct. at 2609, 2611 n. 2, 2612 n. 3, 2619.

Still another way to see this is through the lens of *Parratt v. Taylor*, 451 U.S. 527, 538–43, 101 S.Ct. 1908, 1914–16, 68 L.Ed.2d 420 (1981). The state satisfies its obligation to provide due process of law when it has in place procedures appropriate to hold down the risk of error—even when the risk is increased by unauthorized acts of public officials. See also *Zinermon v. Burch*, 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) (the principle of *Parratt* applies to deprivations of liberty as well as deprivations of property); *Hudson v. Palmer*, 468 U.S. 517, 530–36, 104 S.Ct. 3194, 3202–05, 82 L.Ed.2d 393 (1984) (the principle of *Parratt* applies to intentional as well as negligent deprivations); *Easter House v. Felder*, 910 F.2d 1387, 1400–04 (7th Cir.1990) (en banc) (*Parratt* remains applicable even when a senior public official commits the wrongful conduct); *Albright*, —— U.S. at —— – ——, 114 S.Ct. at 818–19 (Kennedy, J., concurring) (availability of state remedy establishes that malicious prosecution does not violate the due process clause). Illinois offered Buckley extensive hearings, with repeated access to a neutral and detached magistrate. Quite apart from all questions of immunity, Buckley's claim is

doomed unless he can demonstrate that Illinois failed to provide judicial procedures adequate to guard against the effects of pretrial publicity generated by the prosecutor. Yet his complaint does not contain such an allegation, and his memoranda after remand have not volunteered to add such a claim. The same holds for the trial itself, with the further observation that the trial did not add to whatever injury the press conference caused. The jury was unable to reach a verdict, and Buckley was not retried.

A good deal still must be decided in this litigation. Our first opinion dismissed Buckley's appeal to the extent he asked for additional relief against Fitzsimmons, and we also dismissed an appeal asking us to decide whether DuPage County (which does not receive the benefit of official immunity) may be answerable for its prosecutors' decisions. We remanded for further proceedings on Buckley's claim that prosecutors coercively interrogated him. 919 F.2d at 1243–44. Our second opinion added, to the list of remanded claims, Buckley's contention that one or more of the prosecutors arrested him without probable cause. 952 F.2d at 968–69. Other parties have been cooling their heels in the district court, waiting for the resolution of the immunity issues. They are, at last, wrapped up. On Fitzsimmons' appeal, the judgment of the district court is reversed, and the case is remanded with instructions to enter judgment in his favor on the merits of the press conference claim. On Buckley's appeal, the judgment is vacated, and the case is remanded with instructions to enter a partial judgment appropriate in light of the Supreme Court's opinion, this opinion, and the portions of our two earlier opinions that the Supreme Court left undisturbed. See —— U.S. at ——, —— n. 2, —— n. 3, ——, 113 S.Ct. at 2609, 2611 n. 2, 2612 n. 3, 2619. The remaining defendants must answer the complaint on the remaining claims, and further proceedings in the district court should take the ordinary course.

FAIRCHILD, Circuit Judge, dissenting.

## I. Press Conference

Construed liberally, as required at the motion to dismiss stage, Buckley's amended complaint alleges that Fitzsimmons' false statements made when announcing the indictment inflamed public opinion and prevented fair trial and acquittal, and thus caused continued imprisonment pending retrial. Am.Compl. ¶¶ 44, 45, 54, 78. In addition, Fitzsimmons concedes that "[t]o the extent Plaintiff claims that the press conference contributed to a prohibitive bail and to an unfair trial which led to his imprisonment for three years, Defendant Fitzsimmons does not contest that Plaintiff has adequately alleged a deprivation of liberty." Nov. 2, 1993 Br. at 14.

The majority seems to hold that because the prosecutors who conducted the trial would be immune from liability for their acts of advocacy, Fitzsimmons, who was not involved in the trial, would also be immune. I am unable to agree. The fact that the trial is a link in the chain of causation can not mean that Fitzsimmons is immune from liability for his false statements which caused Buckley's loss of liberty by infecting the atmosphere of the trial.

Qualified immunity for Fitzsimmons would be a different issue. I note that *Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961), established that inflammatory publicity may cause a denial of due process in extreme situations. In order to surmount the hurdle of qualified immunity, Buckley would have to demonstrate that the statements complained of would reasonably be expected to be similarly inflammatory. See *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

The majority also relies to some extent on *Parratt v. Taylor*, 451 U.S. 527, 538–543, 101 S.Ct. 1908, 1914–16, 68 L.Ed.2d 420 (1981). *Ante* at 798. I doubt that a plaintiff has the burden of pleading, as the majority intimates, in order to avoid the *Parratt* doctrine, that "Illinois failed to provide judicial procedures adequate to guard against the effects of pretrial publicity generated by the prosecutor." *Ante* at 798. Perhaps such a burden would be reasonable here insofar as the inflamed atmosphere at trial is claimed to have caused the jury's inability to agree on acquittal and therefore Buckley's continued imprisonment. A motion for change of venue is

designed to avoid the effect of community prejudice.[1]

In any event, one can very seriously doubt Buckley's ability to prove that Fitzsimmons' statements contributed materially to a prejudicial atmosphere sufficient to cause improper denial of reduction of bail, or, at the time of trial, to cause some of the jurors to vote for a guilty verdict when their clear duty was to vote to acquit. But because of the liberal construction which must be given to his complaint, I conclude that Buckley is entitled to attempt such proof at the summary judgment stage, and if he survives that, at trial.

## II. Bootprint Evidence and "Coerced" or "Purchased" Statements

When the amended complaint is liberally construed, it makes more than mere allegations that the prosecutors consulted a number of witnesses to find support for their theory, but rather alleges that the prosecutors actually manufactured the bootprint evidence. Am.Compl. ¶¶ 53, 55; see also ¶ 31. If several of the complaint's paragraphs are read together, the complaint may properly be construed to allege that such manufacture caused Buckley's loss of liberty because without it, the indictment and trial would not have occurred. Id. ¶¶ 41, 43, 55.

With respect to the statements by Hernandez and Cruz, the amended complaint, once again liberally construed, alleges more than that the prosecutors merely offered incentives to persuade an otherwise unwilling witness to testify; it claims the prosecutors suborned perjury. Id. ¶¶ 39, 40, 46, 56.

I respectfully disagree with the majority's conclusion that "the location of the injury is dispositive ... for the bootprint evidence and the allegedly coerced confessions alike." Ante at 796. As I understand the "location of the injury" concept, it is that because a wrongful act does not ripen into a § 1983 cause of action until it causes an impairment of a constitutional right, a prosecutor is not liable for the result of his wrongful act, not

within the scope of advocacy, where the immediate cause of the impairment is an act as to which the prosecutor is immune. Here, however, the claim is not only that the prosecutors caused injury by using fabricated or perjured evidence in seeking indictment and at trial, but it seems to be that there would not have been either an indictment or trial if some of the prosecutors had not fabricated evidence and suborned perjury.

The results, after a motion for summary judgment, or trial, may well be different for the various defendants-prosecutors. Fitzsimmons is an example of a defendant who did not participate in the trial, although he allegedly engaged in the wrongful acts of fabricating evidence and inducing witnesses to agree to give false testimony. (The majority correctly points out that these claims against Fitzsimmons are not presently before us.) Defendants Knight and King may have both engaged in the alleged wrongful acts and been involved in the trial. Defendants Ryan and Kilander seem to have been involved in the trial and subsequent proceedings, but less likely to have participated in the alleged wrongful conduct. I readily agree that a defendant prosecutor whose only contribution to Buckley's loss of liberty was the use of evidence at trial or other acts of advocacy would be entitled to absolute immunity.

Prosecutors are not immune from § 1983 liability for their non-advocacy wrongful conduct if Buckley can prove that indictment and trial would not have occurred in the absence of the product of the wrongful conduct. Suborns of perjury is not advocacy and prosecutors are not immune from liability even though the conduct did not ripen into a § 1983 cause of action except by use of the perjured testimony at trial. See Jones v. City of Chicago, 856 F.2d 985, 993 (7th Cir. 1988) ("In constitutional-tort cases as in other cases, 'a man [is] responsible for the natural consequences of his actions.'") (quoting

---

1. Defendants have supplied portions of the transcript of oral argument before the Supreme Court. Buckley's counsel, in response to a question, stated that Buckley had raised the pretrial publicity issue on a motion for change of venue

and that it was resolved against him. A claim by Fitzsimmons that Buckley is collaterally estopped from asserting community prejudice would be a matter for a later stage of this case.

*Monroe v. Pape,* 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961)).

In this case, the Supreme Court decided that prosecutors are not entitled to absolute immunity for activities which were entirely investigative in character. *Buckley v. Fitzsimmons,* —— U.S. ——, —————, 113 S.Ct. 2606, 2615–2617. The majority's theory that if the indictment and trial are the immediate cause of the impairment of constitutional rights, prosecutors are immune from liability for the result of their wrongful investigative acts brings about absolute immunity for wrongful investigative acts.

Buckley may well be unable to prove that the prosecutors affirmatively constructed false evidence, which in turn caused his injuries. When we liberally construe the complaint, however, Buckley has alleged that the prosecutors fabricated evidence and induced perjured testimony which caused his imprisonment. *See Mooney v. Holohan,* 294 U.S. 103, 112–113, 55 S.Ct. 340, 341–42, 79 L.Ed. 791 (1935) (a prosecutor's knowing use of perjured testimony violates the Fourteenth Amendment); *see also United States v. Agurs,* 427 U.S. 97, 103, and n. 8, 96 S.Ct. 2392, 2397, and n. 8, 49 L.Ed.2d 342 (1976) (citing cases).

I conclude that Buckley's complaint is entitled to survive dismissal of his claims regarding Fitzsimmons' alleged prejudicial press conference statements, the alleged manufacture of the bootprint evidence, and the alleged coerced and purchased false statements of witnesses.