**ROSS YORDY CONSTRUCTION COMPANY, an Illinois Corporation, and Ross Yordy, Plaintiffs–Appellants,**

v.

**Samuel NAYLOR, VI, in his individual capacity, Rose Ann Pepple and Stan Pepple, Defendants–Appellees.**

No. 94–2634.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 2, 1994.

Decided May 23, 1995.

John H. Bisbee (argued), Macomb, IL, plaintiffs-appellants.

Michael W. Condon, Michael D. Bersani, Hervas, Sotos & Condon, Phillip A. Luetkehans (argued), Mary E. Dickson, Lara A. Walicek, Schirott & Luetkehans, Itasca, IL, for Samuel Naylor, VI.

L. Lee Smith, Asst. U.S. Atty., Barbara K. Parker, Westervelt, Johnson, Nicoll & Keller, Peoria, IL, for Rose Ann Pepple and Stan Pepple.

Before FLAUM, GARZA and ROVNER, Circuit Judges.[*]

ILANA DIAMOND ROVNER, Circuit Judge.

Rose Ann Pepple was a secretary and bookkeeper at the Ross Yordy Construction Company between 1988 and 1991. After Yordy accused Pepple of stealing over $45,-000 in company funds by way of forged checks during that period, an Illinois grand jury indicted her for theft and forgery on April 11, 1991. Hancock County State's Attorney Samuel Naylor VI subsequently concluded, however, that the prosecution of those charges would, in Yordy's words, be "too complicated." Naylor therefore asked Yordy to authorize dismissal of the charges and suggested that Yordy pursue a civil action instead. When Yordy refused, Naylor continued his investigation. As part of that process, Naylor asked Yordy to undergo a polygraph examination, which was conducted on September 12, 1991, and which yielded results described by the examiner as "inconclusive." Naylor then announced at a September 17, 1991 press conference that the charges against Pepple were being dismissed. In the course of his announcement, Naylor stated that Yordy had been "less than truthful with us" and that he had "lied to the prosecutor."

Yordy then brought this action under 42 U.S.C. § 1983, claiming that Naylor's actions had deprived him and his construction company of their status as victims of a criminal offense, which would have made them eligible for restitution under 730 ILCS 5/5–5–6. The district court dismissed Yordy's complaint, finding that the prosecutor was entitled to absolute immunity for his decision to drop the charges against Pepple and that the Illi-

[*] The Honorable Emilio M. Garza of the United States Court of Appeals for the Fifth Circuit, sitting by designation.

nois statute did not in any event create an entitlement to restitution.[1] We agree.

■ Yordy is himself aware of the difficulty of his position. He concedes the most obvious problem with his case, which is that prosecutors are absolutely immune from civil damages actions under section 1983 for conduct that is "intimately associated with the judicial phase of the criminal process," such as the initiation of a prosecution. *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976); *see also Buckley v. Fitzsimmons,* — U.S. ——, —— – ——, 113 S.Ct. 2606, 2613–14, 125 L.Ed.2d 209 (1993); *Burns v. Reed,* 500 U.S. 478, 484–92, 111 S.Ct. 1934, 1938–42, 114 L.Ed.2d 547 (1991). Yordy attempts to avoid that rule, however, by linking the prosecutor's decision to drop charges in this instance to his allegedly defamatory statements about Yordy. Yordy's theory is unavailing.

■ Yordy's argument begins with the straightforward proposition that a prosecutor's absolute immunity does not extend to out-of-court statements to the press. As the Supreme Court recently explained in *Buckley,*

> Comments to the media have no functional tie to the judicial process just because they are made by a prosecutor. At the press conference, Fitzsimmons did not act in "'his role as advocate for the State[.]'" The conduct of a press conference does not involve the initiation of a prosecution, the presentation of the state's case in court, or

action preparatory for these functions. Statements to the press may be an integral part of a prosecutor's job, and they may serve a vital public function. But in these respects a prosecutor is in no different position than other executive officials who deal with the press, and, as noted above, qualified immunity is the norm for them.

— U.S. at ——, 113 S.Ct. at 2618 (citations omitted). Thus, Yordy could bring a simple defamation action against Naylor without running up against his shield of absolute immunity, but that would not achieve his apparent goal of stating a claim under section 1983.[2]

To that end, Yordy attempts to rely on the analysis of *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). In *Paul,* Davis brought an action under section 1983 against the Louisville, Kentucky chief of police after Davis' name and photograph had appeared in a flyer depicting "active shoplifters," which was distributed to local merchants. Although Davis had been arrested for shoplifting, he had not been convicted. He claimed that his inclusion in the pamphlet deprived him of a liberty interest by inhibiting him from entering stores and by limiting his future employment opportunities. The court declined to elevate what it described as a classic defamation claim to the level of a constitutional tort. It did suggest, however, that defamation could in some instances be actionable under section 1983 if it was linked to the deprivation of "a right previously recognized under state law" (*id.* at 708, 96 S.Ct.

---

1. Yordy actually tried three times to state his claim, filing a complaint, an amended complaint and a second amended complaint, but the district court found similar flaws in all three. The complaints included two claims in addition to the one at issue here. First, Yordy maintained that Naylor's allegedly defamatory statements deprived him of his right of access to the courts by making it impossible for him to receive a fair civil trial of his charges against Pepple in Hancock county. Yordy has not appealed the dismissal of that claim. Yordy also brought a state law claim against Rose Ann Pepple and her husband for conversion. That claim, which raises completely separate issues of both fact and law and which implicates different defendants, remains pending before the district court. The district court entered a Rule 54(b) judgment after dismissing Yordy's section 1983 claims, permitting this appeal.

2. Yordy argues for the first time in his reply brief that he does not in fact have a cause of action under Illinois law. He cites 745 ILCS 10/2–202, which provides:

   > A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct.

   It is not clear to us from the face of the statute why it would preclude an action against a prosecutor for making defamatory statements at a press conference, but we need not concern ourselves with that question in any event. Whether Yordy has succeeded in stating a claim under section 1983 does not depend on whether he has an alternative state law cause of action.

at 1164), such as the right to purchase liquor or the right to attend school (*id.* at 708–710, 96 S.Ct. at 1164–65). *See also, Buckley v. Fitzsimmons,* 20 F.3d 789, 797 (7th Cir.1994) (on remand), *cert. denied,* —— U.S. ——, 115 S.Ct. 740, 130 L.Ed.2d 642 (1995). Yordy attempts to apply that reasoning here, arguing that because Naylor's defamatory statement accompanied the deprivation of his status as a crime victim and of his consequent state law right to restitution, it is actionable under section 1983.

As the district court concluded, however, there are at least two flaws fatal to Yordy's theory. First, Yordy has failed to establish that Naylor's announcement affected a protected liberty or property interest. A protected interest is one to which the individual can show "a legitimate claim of entitlement." *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989). And 730 ILCS 5/5–5–6, on which Yordy bases his claim, does not create an entitlement to restitution. It provides:

> In all convictions for offenses in violation of the Criminal Code of 1961 committed against any person 65 years of age or older in which the person received any injury to their person or damage to their real or personal property as a result of the criminal act of the defendant, the court shall order restitution as provided in the Section. In all other cases the court shall at the sentence [sic] hearing determine whether restitution is an appropriate sentence to be imposed on each defendant convicted of an offense. If the court determines that an order directing the offender to make restitution is appropriate the offender may be sentenced to make restitution which shall be determined by the Court as hereinafter set forth....

The statute unambiguously leaves the imposition of a restitution order to the unfettered discretion of the district court. *See People v. Strebin,* 209 Ill.App.3d 1078, 154 Ill.Dec. 420, 424, 568 N.E.2d 420, 424 (1991) ("In all other instances (except certain offenses involving victims 65 years of age or older), the entry of an order of restitution is discretionary"). Thus Yordy, who has not alleged that he is 65 years of age or older, would not be entitled to restitution, even if Pepple were to be tried and convicted. *See Thompson,* 490 U.S. at 463, 109 S.Ct. at 1910 ("[T]he use of 'explicitly mandatory language,' in connection with the establishment of 'specified substantive predicates' to limit discretion, forces a conclusion that the state has created a liberty interest."); *see also Fittshur v. Village of Menomonee Falls,* 31 F.3d 1401, 1406 (7th Cir.1994); *Kim Constr. Co. v. Bd. of Trustees,* 14 F.3d 1243, 1247 (7th Cir.1994). He has not, therefore, been deprived of any "right previously recognized under state law," as required under the *Paul* analysis.

Nor would *Paul* help Yordy even if he were entitled to restitution under section 5/5–5–6. Yordy's loss of "victim" status resulted not from Naylor's allegedly defamatory statements, but from his absolutely immune decision to drop the charges against Pepple. *Paul* suggests that a defamation not otherwise actionable as a constitutional tort may in some instances rise to that level if it leads to an otherwise *actionable* constitutional deprivation. *Paul* does not, however, make an otherwise *inactionable* deprivation actionable merely by virtue of being accompanied by a defamatory remark. As we explained in *Buckley,* 20 F.3d at 798, "a plaintiff who uses a 'stigma plus' approach to avoid *Paul* ... must identify a 'plus' other than the indictment, trial, and related events for which the defendants possess absolute prosecutorial immunity." Naylor is absolutely immune from suit under section 1983 for his decision not to prosecute Rose Ann Pepple. That immunity is not affected by the fact that the announcement of his decision was accompanied by an allegedly defamatory remark, even though Naylor is not absolutely immune from suit for the remark itself.

Yordy has failed to state a claim under section 1983 and the district court's dismissal of his complaint is

Affirmed.