Marshall C. SPIEGEL, Plaintiff,

v.

Daniel M. RABINOWITZ, Defendant.

No. 95 C 4449.

United States District Court, N.D. Illinois, Eastern Division.

April 9, 1996.

David Carl Thomas, Chicago, IL, for Plaintiff.

Patrick Malone Blanchard, Terry L. McDonald, Chicago, IL, for Defendant.

## *MEMORANDUM OPINION AND ORDER*

ZAGEL, District Judge.

Marshall C. Spiegel, a member of the Chicago Mercantile Exchange, was at home with his wife, Carol, and young son at 5:00 p.m. on Wednesday, May 29, 1993. All three of them were disturbed by a hammering noise from the apartment directly above them. Disturbing noises from above have occurred in the past. After enduring the noise, Carol Spiegel went upstairs to complain and to ask for silence. This lead to an argument between Carol Spiegel and the upstairs tenants, Loren Cherny and Mim Bobbin. Marshall Spiegel, hearing the argument, picked up his son and went upstairs. While he was upstairs, Mim Bobbin threatened Marshall Spiegel with death. Loren Cherny struck him in the back. Mim Bobbin also struck him. We are not told what happened between Marshall Spiegel's arrival upstairs and the threat and the blow. We are told what did not happen. Marshall Spiegel did not kick or knee or make offensive physical contact with either Loren Cherny or Mim Bobbin.

On Friday, May 31, Marshall Spiegel reported to the police concerning the acts of Loren Cherny and Mim Bobbin.

On Wednesday, June 23, criminal complaints were filed[1] charging Cherny and Bobbin with battery. Cherny and Bobbin learned of this, and on Friday, June 25, they complained themselves about Marshall Spiegel's actions on May 29. Criminal battery complaints were then issued against Spiegel.

Daniel Rabinowitz was assigned to assess the case. Marshall Spiegel alleges that Rabinowitz did a wilfully incomplete and inadequate job. Rabinowitz read the police reports, talked with the police officers and interviewed all four persons present—giving each a Miranda warning. What he did not do was uncover the fact that (1) Bobbin signed a written statement on June 1 in which she did not even say that Marshall Spiegel touched Cherny; (2) Cherny manufactured evidence by saying he photographed a bruise the day after the incident when it was clear from the developer's receipt that the photo was taken more than a week after the incident;[2] and (3) disinterested witnesses said that Marshall Spiegel did not strike Cherny but that Cherny and Bobbin struck him.

---

1. The complaint says "criminal complaints were filed on behalf of Plaintiff." I assume this means that criminal complaints were filed on behalf of the People of the State of Illinois on the basis of plaintiffs' complaint.

2. The complaint is unnecessarily puzzling. I can infer that Cherny and Bobbin said something about what Marshall Spiegel did and I infer that it was battery. Perhaps it is artful to plead the detail of plaintiffs' version of the event and leave the other side's accusations mysteriously vague. The problem with this artfulness is that I have no idea whether Bobbin's statement ought to have been considered by Rabinowitz, perhaps she never said that Marshall Spiegel touched Cherny. I have no idea why a developer's receipt demonstrates that a picture was taken a week after the incident rather than a day after the incident. Delivery to a developer weeks or months after taking a photograph is hardly uncommon. It might be a good point if Cherny and Bobbin told the police or Rabinowitz that they took the film in on the day after the incident. But, we are not told what they said.

Rabinowitz also failed to appreciate the inference of falsity that arises from the fact that Cherny and Bobbin accused Marshall Spiegel weeks after the incident and only when they knew that he had complained against them.

Finally, Rabinowitz, it is alleged, was biased because Marshall Spiegel had sometime in the past filed charges with the Attorney Registration and Disciplinary Commission against a co-worker[3] of Rabinowitz. These charges resulted in Rabinowitz being ordered by his supervisor to prosecute another criminal case in which Marshall Spiegel was the complaining witness.

Rabinowitz gave the results of his flawed investigation to his superiors. On top of this, he failed to report that Marshall Spiegel told him that Bobbin had followed plaintiff and pushed him from behind.

The States Attorney decided not to pursue the complaints of Marshall Spiegel and proceeded with the case against Marshall Spiegel.

Marshall Spiegel defended the charge and won acquittal. He paid a lawyer to defend him. He says that this complaint and subsequent trial caused his eviction, a loss of employment status and a loss of income.

Finally, he says that Rabinowitz did this intentionally and maliciously.

It is difficult to sue a prosecutor. They are immune. Their immunity extends only to their acts as prosecutors even if the acts are malicious. If they step over the line into, say, police work, they lose absolute immunity and are left with qualified immunity. This rule is invoked by plaintiffs' use of the mantra "factual investigation" when he describes what defendant did. I had thought that any prosecutor was still being a prosecutor even if she decided not to limit her assessment of a case to police reports. Interviewing witnesses is one way a prosecutor can assess the weight of a pending case. What I think, however, is not controlling; the Supreme Court jurisprudence is controlling, so I turn to that.

In *Imbler v. Pachtman,* 424 U.S. 409, 420–24, 96 S.Ct. 984, 990–92, 47 L.Ed.2d 128 (1976), the Supreme Court of the United States sanctified the widely accepted rule of absolute immunity for prosecutors. Imbler had received the death penalty for murder. He defended with an alibi offering his own testimony and that of another. The primary identification witness was one Costello. After trial, the prosecutor Pachtman wrote to the Governor of California describing evidence he later discovered which corroborated the alibi, as well as new revelations about Costello's background which made him seem less trustworthy than he had appeared at trial. Imbler eventually sued Pachtman claiming he conspired unlawfully to charge and convict Imbler through intentionally allowing false testimony, altering a police artist sketch and proceeding despite a lie detector test that "cleared" Imbler. The Court denied Imbler's right to sue. It said,

"If a prosecutor had only a qualified immunity, the threat of § 1983 suits would undermine performance of his duties no less than would the threat of common-law suits for malicious prosecution. A prosecutor is duty bound to exercise his best judgment both in deciding which suits to bring and in conducting them in court. The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages. Such suits could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate. Further, if the prosecutor could be made to answer in court each time such a person charged him with wrongdoing, his energy and attention would be diverted from the pressing duty of enforcing the criminal law.

Moreover, suits that survived the pleadings would pose substantial danger of liability even to the honest prosecutor. The prosecutor's possible knowledge of a witness' falsehoods, the materiality of evidence not revealed to the defense, the

---

**3.** I assume co-worker means another Assistant States Attorney.

propriety of a closing argument, and—ultimately in every case—the likelihood that prosecutorial misconduct so infected a trial as to deny due process, are typical of issues with which judges struggle in actions for post-trial relief, sometimes to differing conclusions. The presentation of such issues in a § 1983 action often would require a virtual retrial of the criminal offense in a new forum, and the resolution of some technical issues by the lay jury. It is fair to say, we think, that the honest prosecutor would face greater difficulty in meeting the standards of qualified immunity than other executive or administrative officials. Frequently acting under serious constraints of time and even information, a prosecutor inevitably makes many decisions that could engender colorable claims of constitutional deprivation. Defending these decisions, often years after they were made, could impose unique and intolerable burdens upon a prosecutor responsible annually for hundreds of indictments and trials.

The affording of only a qualified immunity to the prosecutor also could have an adverse effect upon the functioning of the criminal justice system. Attaining the system's goal of accurately determining guilt or innocence requires that both the prosecution and the defense have wide discretion in the conduct of the trial and the presentation of evidence. The veracity of witnesses in criminal cases frequently is subject to doubt before and after they testify, as is illustrated by the history of this case. If prosecutors were hampered in exercising their judgement as to the use of such witnesses by concern about resulting personal liability, the triers of fact in criminal cases often would be denied relevant evidence.

The ultimate fairness of the operation of the system itself could be weakened by subjecting prosecutors to § 1983 liability. Various post-trial procedures are available to determine whether an accused has received a fair trial. These procedures include the remedial powers of the trial judge, appellate review, and state and federal post-conviction collateral remedies. In all of these the attention of the reviewing judge or tribunal is focused primarily on whether there was a fair trial under law. This focus should not be blurred by even the subconscious knowledge that a post-trial decision in favor of the accused might result in the prosecutor's being called upon to respond in damages for his error or mistaken judgment.

We conclude that the considerations outlined above dictate the same absolute immunity under § 1983 that the prosecutor enjoys at common law. To be sure, this immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty. But the alternative of qualifying a prosecutor's immunity would disserve the broader public interest. It would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system. Moreover, it often would prejudice defendants in criminal cases by skewing post-conviction judicial decisions that should be made with the sole purpose of insuring justice. With the issue thus framed, we find ourselves in agreement with Judge Learned Hand, who wrote of the prosecutor's immunity from actions for malicious prosecution:

> As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation. *Gregoire v. Biddle*, 177 F.2d 579, 581 (C.A.2 1949)." *Imbler*, 424 U.S. at 424–28, 96 S.Ct. at 991–94.

The Court also emphasized that during the initiation stages of a prosecution, the prosecutor is constantly required to make decisions on extremely sensitive issues. Some of these questions include "whether to present a case to a grand jury, whether to file an information, whether to dismiss an indictment against particular defendants, which witnesses to call, and what other evidence to present." *Imbler*, 424 U.S. at 431 n. 33, 96

S.Ct. at 996 n. 33. And although the Court did not expressly state an opinion as to whether these decisions would be protected by absolute immunity, the Court stated: "Preparation, both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing, and evaluating of evidence." *Id.*

Then came *Burns v. Reed*, 500 U.S. 478, 492, 111 S.Ct. 1934, 1942–43, 114 L.Ed.2d 547 (1991), which found a prosecutor to be absolutely immune from liability arising from his actions at a probable cause hearing. For his legal advice to police he has only qualified immunity. *Burns*, 500 U.S. at 496, 111 S.Ct. at 1944–45. The principle applied was a "functional approach" which looks to "the nature of the function performed, not the identity of the actor who performed it." *Id.* at 486, 111 S.Ct. at 1939 (*quoting Forrester v. White*, 484 U.S. 219, 229, 108 S.Ct. 538, 545, 98 L.Ed.2d 555 (1988)). The Court emphasized that the duties included within a prosecutor's role as an advocate for the State involved actions performed outside the courtroom and actions preliminary to the actual initiation of a criminal prosecution. *Burns*, 500 U.S. at 486, 111 S.Ct. at 1939.

Finally, there is *Buckley v. Fitzsimmons*, 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). The prosecutors were alleged to have manufactured false evidence by shopping for experts who would give an opinion they wanted. Since all of this occurred *before* they had probable cause or had even convened a grand jury, this was "police work" for which there was no absolute immunity. *Buckley*, 509 U.S. at 273–77, 113 S.Ct. at 2616–17. Neither, said the Court, were post-indictment press conferences a prosecutorial function. *Id.* at 277–79, 113 S.Ct. at 2618.

Roughly stated, absolute immunity attaches to prosecuting but not to investigating or administering, neither of which relates to the advocate's preparation for the initiation of a judicial proceeding. *Id.* at 271–73, 113 S.Ct. at 2615. This rough line is obviously hard to apply. The paradigm act of prosecution, calling and presenting a witness at trial will necessarily require investigation (interviewing the witness, showing the witness physical evidence, etc.) and administration (ordering the police to find the witness and give the witness a ride to court, etc.).

All of this the Supreme Court recognized in *Buckley* where it said that absolute immunity must include acts of "the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made ... There is a difference between the advocates role in evaluating evidence and interviewing witnesses as he prepares for trial ... and the detectives' role in searching for the clues and corroboration that might give him probable cause to [arrest]. A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." *Buckley*, 509 U.S. at 271–75, 113 S.Ct. at 2615–16.

In *Evans v. County of Cook*, 1995 WL 733451 (N.D.Ill.1995), I found absolute immunity to protect a prosecutor who allegedly did a bad job by not carefully weighing the justice of a domestic battery charge, delaying investigation of the charge and persisting in the charge after the complaining witness wanted to drop it. There are other cases which hold prosecutors immune from suit for ignoring evidence and failing to investigate. *See Glick v. Koenig*, 766 F.2d 265, 269 (7th Cir.1985); *Elder v. Athens–Clarke County, Ga.*, 54 F.3d 694, 695 (11th Cir.1995).

On this line of cases, defendant relies for dismissal.[4]

---

4. He also argues that the malicious prosecution alleged here is not a constitutional tort upon which § 1983 liability may be founded, particularly where there was no incarceration. Read broadly, the complaint says Marshall Spiegel was evicted from his apartment, his employment status was adversely affected, and he lost income. Malicious prosecution is a Fourth Amendment claim, plaintiff alleges his claim under the Fifth and Fourteenth, but this is a trivial objection easily overcome by an amendment which I would allow.

*Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) addressed the issue. Four members of the Court found that whatever remedy there was for malicious prosecution was to be found in the Fourth Amendment. Albright did not claim under the Fourth in the Supreme Court so his case was lost. Their opinion did not

In response the plaintiff concedes all of this analysis. Rabinowitz is liable, says the plaintiff, because he was not really exercising a prosecutor's function because he was not acting to decide whether to proceed with the case or to prepare for prosecution. He was assigned to evaluate the case and report to a supervisor who would decide what to do and how to do it. And his true failing was maliciously to misrepresent his investigative results to his supervisor. So he was the functional equivalent of a police officer sent out by a prosecutor to investigate and report back.[5]

No case which addresses this issue is cited to me. Perhaps plaintiff argues that in a multi-prosecutor office, only one prosecutor has absolute immunity, the decision-making prosecutor. But, prosecution is often a joint enterprise and recommendations are exchanged and debated. Preparing part of a case, examining fact and law for another prosecutor's use is part of the prosecution function. Assume in the midst of trial, the chief prosecutor assigns an assistant to interview a witness and recommend whether or not to call the witness. The assistant reports on what occurred and recommends calling the witness who turns out to be good for the prosecution but, in fact, unreliable. I doubt that the assistant prosecutor is not absolutely immune. As noted by the Court in *Imbler*, prosecutors are often faced with conflicting evidence, "shady" witnesses, and tough decisions regarding whether a case should be brought against a particular defendant. *Im-*

*bler*, 424 U.S. at 426 n. 24, 96 S.Ct. at 993 n. 24. These decisions (which evidence to present at trial, which witnesses to call, and whether a case should even be brought in the first place), although technically occurring *before* the actual trial, should be protected by absolute prosecutorial immunity. The Court even noted that absolute immunity protects a prosecutor who willfully uses perjured testimony and who willfully suppresses exculpatory information. *Id.* at 431 n. 34, 96 S.Ct. at 995–96 n. 34.

Marshall Spiegel's counsel, perhaps tongue in cheek, characterizes absolute immunity as having "Narrow confines." For this he cites a line from *Burns v. Reed* which refused to extend immunity to any action related in any way to the ultimate decision whether to prosecute. The Court said "we have never indicated that absolute immunity is that expansive." *Burns*, 500 U.S. at 495, 111 S.Ct. at 1944. How one bases a conclusion that a doctrine is narrowly confined from the statement that the doctrine is not so expansive as to cover any act by a prosecutor is a little beyond me. It may be similar to what Rabinowitz is supposed to have done in reporting to his superiors.

Absolute immunity is not a narrow doctrine. Its ambit is quite broad and, when the doctrine is criticized, it is hard to find a commentator who says it is too narrow.

There is very little law on this question.[6] We know that a police officer who gives false

---

**5.** I attach no significance to the fact that Rabinowitz gave Miranda warnings. The warnings were probably unnecessary since no one appears to have been in custody or under arrest. In any event, the duties imposed by Miranda apply to prosecutors acting solely as prosecutors.

**6.** We know that a United States Attorney General is not protected by absolute immunity when he authorizes a warrantless wiretap. *Mitchell v. Forsyth*, 472 U.S. 511, 520–21, 105 S.Ct. 2806, 2812–13, 86 L.Ed.2d 411 (1985) (reasoning that because the wiretap authorization was not done for anticipated prosecution or to further a criminal investigation, but only to gather evidence, the attorney general was performing an investigatory, not a prosecutorial, function). Whereas a judge is granted a broad absolute immunity while performing his judicial functions, *see Stump v. Sparkman*, 435 U.S. 349, 355–56, 364, 98 S.Ct. 1099, 1104–05, 1108–09, 55 L.Ed.2d 331

---

address the sufficiency of the claim. Albright does not teach anything about the nature of the allowable claim. The lower court it affirmed did teach something. In *Albright v. Oliver*, 975 F.2d 343 (7th Cir.1992) the Court said malicious prosecution does not sail as a constitutional tort absent incarceration, loss of employment or other "palpable consequences." Albright said he suffered the restriction of pre-trial bond, the cost of defense, loss of reputation and consequent inability to do business, get a job in the community or secure credit and the necessity of relocating from Macomb to St. Louis. 510 U.S. at ——, 114 S.Ct. at 821 (Souter, J. concurring). This was not enough for the Court of Appeals. I judge eviction from an apartment to be a palpable consequence. The vaguer allegations of "adverse effect" on employment and loss of revenue may not be palpable. They look much like Albright's allegations about employment. In any event, enough is alleged under prevailing law.

evidence to a prosecutor cannot escape liability by using the prosecutor's decision to proceed as shield. *Jones v. Chicago,* 856 F.2d 985 (7th Cir.1988). And both the Court of Appeals and another District Judge have opined that a prosecutor who concocts evidence and deceives superiors during the investigation of the case would not be absolutely immune. *Buckley v. Fitzsimmons,* 20 F.3d 789, 796–97 (7th Cir.1994); *Buckley v. County of DuPage,* 88 C 1939, 1996 WL 10899 (N.D.Ill.1996) (Coar, J.). None of these cases addresses the crucial question here. In *Jones,* the persons sued were police officers who do not possess absolute immunity. In the *Buckley* cases, both courts were dealing with actions by prosecutors who already had been found to be acting outside the prosecutorial function. Neither court was faced with a claim against a prosecutor who was pursuing a matter in which a charge had already been filed. There is a single passage in Judge Easterbrook's opinion in *Buckley* that is suggestive of an answer: "[I]f the prosecutors themselves had concocted the evidence, ... the immunized prosecutorial decisions would be the cause of the injury ... [T]he induced two experts to give testimony more damaging to Buckley than these experts' initial notes and reports suggested. These wrongs, if they are wrongs at all, occurred at trial ... and do not support an award of damages." *Buckley,* 20 F.3d at 797.

This suggests the answer in this case that Rabinowitz is absolutely immune. What he did occurred after the charge had been filed and after prosecution had commenced. His sin, misrepresenting the evidence to his superior, is surely less grievous than concocting evidence. Whatever lies he told his superior do not prevent the truth from prevailing at trial, while concocting evidence, and presenting that evidence at trial may well have that effect.

The better reading of the Supreme Court jurisprudence is that the context is important. What a prosecutor does after a charge is filed (and after the charging process has begun) is covered by the cloak of absolute immunity. We know that there is a temporal limit to absolute immunity. It begins with the charging process, it also ends when the prosecution is over and the prosecutor moves on to other matters. Thus, a prosecutor who discovers exculpatory evidence after trial and after she has left the case, and then fails to disclose it, is not absolutely immune. *See Houston v. Partee,* 978 F.2d 362, 365–68 (7th Cir.1992) (no historical warrant for extending absolute immunity to prosecutors who fail to disclose exculpatory evidence acquired when they are no longer personally prosecuting the criminal case).

In *Boyd v. Village of Wheeling,* No. 83 C 4768, 1985 WL 2564 (N.D.Ill.1985), Assistant States Attorney Zehe was called to the police station immediately after Boyd had been questioned by the police. Boyd complained to Zehe of coercive and improper police action, then Zehe began to question the plaintiff himself. Boyd sued Zehe and argued that Zehe had acted as an investigator during the interrogation, and could not assert absolute immunity. Judge Grady dismissed the action, stating:

> In this case, Zehe was not called to the station until long after plaintiff was first detained and the questioning began. In fact, Zehe was not called until after plaintiff had confessed. It is reasonable, indeed desirable, that Zehe question plaintiff himself to verify the confession obtained by the police before making his own decision

---

(1978) (granting absolute immunity to a judge for asserting jurisdiction over a particular case, and emphasizing that a judge should have the power to act on his own convictions, and be free of apprehension about any personal consequences that may arise from his decisions), a judge performing administrative duties, as is any other government official, is not protected by absolute immunity, *see Forrester v. White,* 484 U.S. 219, 229–30, 108 S.Ct. 538, 545–46, 98 L.Ed.2d 555 (1988) holding that a judge's personnel decision to fire a probation officer, was administrative,

not judicial in nature, and thus did not provide the judge with absolute immunity). We also know that prosecutors are not protected by absolute immunity when they planned and helped execute a raid in order to gather evidence of suspected criminal behavior. *Hampton v. City of Chicago,* 484 F.2d 602, 608–9 (7th Cir.1973) rejecting the prosecutors argument "that evidence gathering is so closely related to the presentation of evidence at trial that it should also be clothed with immunity").

whether or not to file charges. Zehe did not participate in the decision to interrogate plaintiff for seven hours ... We find, therefore, that Zehe's actions were part of his quasi-judicial function in gathering and evaluating evidence in order to make a prosecutorial decision whether or not to file charges. · Zehe is absolutely immune from civil liability for his actions in connection with this case. *Boyd*, at *11.

In *Hunt v. Jaglowski*, 926 F.2d 689 (7th Cir.1991), the police had already questioned Hunt. Assistant States Attorney Petrocelli then visited the station and Hunt complained that the police had used coercive tactics to get a confession. Petrocelli allowed the officers to continue interrogation, and the plaintiff eventually confessed. In affirming the district court's directed verdict in favor of Petrocelli, the Seventh Circuit noted that a states attorney "is vested with exclusive discretion in the initiation and management of a criminal prosecution." *Hunt*, 926 F.2d at 692. This discretion includes the determination of which charges will be brought by the Assistant States Attorney. *Id.* The court referred to the *Boyd* case, and emphasized:

> Petrocelli's function in being present was merely to review, approve or disapprove, and issue the charges the police were seeking. The police had conducted the investigation of this case, as was their function, before Petrocelli was called. Petrocelli was not present during the polygraph test nor the lineup; Petrocelli was not present when Hunt claims he was beaten; and Petrocelli was not present at the particular time Hunt alleges he gave his coerced confession. Like the plaintiff in· *Boyd*, Hunt's initial contact with Petrocelli came when Petrocelli was called after Hunt had confessed and the police were seeking review of and approval or disapproval of the charges they were detaining him on. Because this is an act toward "initiating a prosecution and in presenting the State's case," Petrocelli enjoyed absolute immunity. *Id.* at 693.

There is a clear analogy between *Boyd*, *Hunt*, and this case which involves initial questioning of the plaintiff and the filing of reports by the police, followed by subsequent review by a state's attorney. Rabinowitz, in reviewing the police reports and interviewing the four witnesses, was doing prosecutorial duty in anticipation of trial. Two complaints had already been filed. The police had conducted an investigation into exactly what happened on the night of May 29, 1993. Police reports had been prepared. Rabinowitz was reviewing these documents and interviewing these witnesses in order to assess the prosecutorial value of the case. Rabinowitz knew that *someone* could lawfully be charged as a result of these complaints. Under *Buckley*, a prosecutor assumes the role of advocate, once there is a probable cause for arrest. In this case, the police reports and the two complaints clearly demonstrated a probable cause for Rabinowitz to file a charge against *some* individual.

What is outside the existing jurisprudence is the question of which prosecutors possess immunity. Obviously, the decision maker is immune. I doubt that one can refuse to extend it to all prosecutors who are jointly presenting the case. But here, it is alleged, there was no joint action. Rabinowitz was there to investigate, assess and report to his superior who alone would decide what to do.

It could be argued that the Supreme Court in *Buckley v. Fitzsimmons* adopted the model of absolutely protected prosecutors who make decisions and less protected prosecutors who investigate and recommend. I think this is not so. At the heart of *Buckley* is the idea that the prosecutors there were doing precharge process police work. They were liable not because as assistant prosecutors they had an independent duty to speak truthfully and without malice which exempted their absolute immunity; rather they were liable because police officers doing the same thing are protected only by qualified immunity.

It is my view that a prosecutor who is told by his superiors to investigate a pending charge and to report back is performing a prosecutorial, not a police, function. I think this is the policy of the Supreme Court.

I would be reluctant to approve a rule which would make the outcome of immunity questions depend upon the precise nature of the chain of command in a prosecutor's of-

fice. We are, after all, construing a rule which affords not only exemption from liability but exemption from suit. Its value would be diminished if every time a prosecutor were sued, discovery would be had into the precise relationship of prosecutor to prosecution decision. Does the assistant prosecutor simply report facts, or recommend or decide. If the suit is defended on the grounds that the assistant prosecutor has the power effectively to recommend (and, having such power, is a decision maker), then there ought to be discovery of all the files on which the assistant prosecutor worked in order to test the truth of the defense. Indeed, the claim that an assistant prosecutor is a decider or not a decider will justify discovery ranging over the entire workload of the prosecutor. Detailed inquiry into the thought processes and the respective (and sometimes shifting) roles of prosecutors in a single case may be had. This consequence seems profoundly at odds with the purpose of prosecutorial immunity.

The complaint is dismissed.