

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-6-2000

# Michaels v. State of NJ

Precedential or Non-Precedential:

Docket 99-5486

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Michaels v. State of NJ" (2000). *2000 Decisions.* Paper 120.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/120

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed June 5, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-5486

MARGARET KELLY MICHAELS
        Appellant
v.

STATE OF NEW JERSEY; ATTORNEY GENERAL'S
OFFICE; COUNTY OF ESSEX; ESSEX COUNTY
PROSECUTOR; GEORGE L. SCHNEIDER, ESQ. ;
HERBERT TATE, ESQ.; JOHN MASTROANGELO; JOHN
NOONAN; GLENN GOLDBERG, ESQ.; SARAH SPENCER-
MCARDLE; EILEEN C. TREACY, M.A.; THE ESSEX
COUNTY POLICE DEPARTMENT; NEWARK POLICE
DEPARTMENT; DIVISION OF YOUTH AND FAMILY
SERVICES; LOUIS FONNELARAS; SUSAN ESQUILLAN;
"JOHN DOES", 1 THROUGH 20 (FICTITIOUS PERSONS);
"JOSEPH DOES", 1 THROUGH 20 (FICTITIOUS
PERSONS); "JAMES DOES"; "JANE DOES", 1 THROUGH
20 (FICTITIOUS PERSONS); "HARRY DOES", 1 THROUGH
20 (FICTITIOUS PERSONS); GEORGE MCGRATH

SUSAN ESQUILLAN
        Defendant/Third-Party Plaintiff

v.

THE HEALTH CARE INSURANCE COMPANY
        Third-Party Defendant

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 96-03557)
District Judge: Honorable Maryanne Trump Barry

* The Honorable Arthur L. Alarcon, Senior Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.
Argued: March 21, 2000

Before: MANSMANN and GREENBERG, Circuit Judges and ALARCON, Senior Circuit Judge*

(Filed: June 5, 2000)

Louis J. Santore [Argued]
Santore & Kenny
300 Harmon Meadow Boulevard
Secaucus, NJ 07094

Attorney for Appellant

Juan C. Fernandez
Essex County Counsel

Steven C. Mannion [Argued]
Assistant County Counsel
County of Essex
Hall of Records, Room 530
Newark, NJ 07102

Attorneys for Appellees George
McGrath and Richard
Mastroangelo

Jacqueline A. DeGregorio [Argued]
Robert D. Laurino
Weiner Lesniak
629 Parsippany Road
Parsippany, NJ 07054-0438

Attorneys for Sara Sencer-McArdle

John J. Farmer, Jr.
Attorney General of New Jersey

2

Mary C. Jacobson
Assistant Attorney General of
 Counsel

Valerie L. Egar [Argued]
Deputy Attorney General
Office of Attorney General of
 New Jersey
Department of Law & Public Safety
Division of Law
Richard J. Hughes Justice Complex
Trenton, NJ 08625

 Attorneys for Louis Fonnelaras

Terri A. Smith [Argued]
Stevens & Minter
300 Lighting Way
2nd Floor
Secaucus, NJ 07096

 Attorney for Susan Esquilin

OPINION OF THE COURT

ALARCON, Senior Circuit Judge.

Margaret Kelly Michaels ("Michaels") appeals from the order granting the defendants' motion for summary judgment and dismissing her S 1983 claims against them. Michaels alleged that the defendants violated her constitutional rights by employing coercive interview techniques with child witnesses while investigating allegations of child abuse made against her. The district court granted the defendants' motions for summary judgment on three alternative grounds. First, the district court found that the defendants were entitled to qualified immunity because Michaels's allegations that the defendants engaged in an improper investigation did not allege a violation of her constitutional rights. The district court then ruled that even if the improper investigation did violate her constitutional rights, the defendants would nonetheless be entitled to qualified immunity because those

3

rights were not clearly established at the time of the investigation such that a reasonable person in the defendants' position would have known that they were violating her rights. Finally, the district court concluded that, putting the issue of qualified immunity aside,

Michaels's S 1983 malicious prosecution claim must be dismissed for failure to state a claim. Michaels contends that each one of the district court's conclusions was erroneous. We agree with the district court that the use of improper interview techniques in questioning the children did not violate any of Michaels's constitutional rights. We conclude that the district court correctly determined that Michaels failed to demonstrate that her constitutional rights were violated. We do not consider its alternative grounds for granting summary judgment.

I

A child who attended the Wee Care Nursery School in Maplewood, New Jersey, reported to a nurse at his pediatrician's office that he had been sexually abused by Michaels. Michaels was employed at the nursery school as a teacher. On April 30, 1985, Louis Fonnelaras, an investigator with the Institutional Abuse Investigation Unit of the Division of Youth and Family Services, was assigned to investigate the merits of the child's allegation. Mr. Fonnelaras informed John Mastroangelo, an investigator with the Essex County Prosecutor's Office, of the child's accusation. Mr. Mastroangelo notified Sarah Sencer–McArdle, the director of the Child Abuse Unit of the Prosecutor's Office, of the sexual abuse report. Shortly thereafter, four other children made similar allegations regarding Michaels's conduct. Ms. Sencer–McArdle interviewed each of the children. The evidence she discovered induced a grand jury to return an indictment against Michaels.

Following the return of the first indictment, other children reported additional allegations of sexual misconduct by Michaels at the nursery school. After interviewing the children, Ms. Sencer–McArdle presented the results of her investigation to a second grand jury. The Essex County Prosecutor's Office continued to receive

4

reports of sexual misconduct committed against children at the Wee Care Nursery School. Ms. Sencer–McArdle presented this evidence to a third grand jury after conducting additional interviews. During the course of these investigations, Mr. Mastroangelo and George McGrath, another investigator with the Essex County Prosecutor's Office, Susan Esquilin, a psychologist, and Mr. Fonnelaras also participated in questioning the children. A total of one hundred and sixty-three charges werefiled against Michaels in three separate indictments.

On June 22, 1987, the trial regarding these charges was

commenced in the Superior Court of New Jersey. On April 15, 1988, the jury convicted Michaels of 115 counts of aggravated assault, sexual assault, endangering the welfare of children, and terroristic threats. On March 26, 1993, the Appellate Division reversed the convictions and remanded for a new trial. The court questioned the reliability of the methods used to interview the children. The court held that, "courts must provide a remedy where the record demonstrates that an accuser's testimony is founded upon unreliable perceptions, or memory caused by improper investigative procedures if it results in a defendant's right to a fair trial being irretrievably lost. . . .[and that a] factual hearing would be required for this purpose." See State v. Michaels, 264 N.J. Super. 579, 631–32 (App. Div. 1993). The Supreme Court of New Jersey affirmed the reversal of the judgment of conviction. See State v. Michaels, 136 N.J. 299 (1994). On December 1, 1994, the Essex County Prosecutor's Office dismissed all charges against Michaels.

On June 13, 1996, Michaels filed a complaint in the Superior Court of New Jersey. On July 25, 1996, the defendants removed the action to the United States District Court, District of New Jersey. Numerous claims and defendants were dismissed, either voluntarily or by court order, leaving only the claims of malicious prosecution and violation of S 1983 against five defendants: Louis Fonnelaras, John Mastroangelo, Sarah Sencer–McArdle, George McGrath, and Susan Esquilin (collectively "the defendants"). The defendants filed motions for summary judgment based on the defense of qualified immunity. In

5

May, 26, 1999, the district court granted the motions and dismissed the S 1983 claims. The district court remanded the common law malicious prosecution claim to the Superior Court of New Jersey. Michaels timely filed this appeal. We have jurisdiction pursuant to 28 U.S.C.S 1291.

II

We review a district court's grant of a motion for summary judgment de novo. See Bartnicki v. Vopper, 200 F.3d 109, 114 (3d Cir. 1999). Summary judgment is appropriate where, viewing the record in the light most favorable to the non–moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Jones v. School Dist. of Philadelphia, 198 F.3d 403, 409 (3d Cir. 1999).

In analyzing whether a defendant is entitled to the dismissal of an action based on the defense of qualified

immunity, we must first determine "whether the plaintiff's claims make out a violation of a constitutional right." Assaf v. Fields, 178 F.3d 170, 174 (3d Cir. 1999) (citing Siegert v. Gilley, 500 U.S. 226, 231 (1991)). If we conclude that the plaintiff has alleged a violation of a constitutional right, we must then determine whether the defendant violated a clearly established right such that a reasonable official in the defendant's position would know that his conduct was unlawful. See id.; see also Sharrar v. Felsing, 128 F.3d 810, 826 (3d Cir. 1997) ("Government officials performing discretionary functions are `shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' ") (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). These inquiries are questions of law that the court must resolve. See Sharrar, 128 F.3d at 828.

Michaels contends that the district court erred in concluding that the defendants were entitled to qualified immunity because the interview techniques they employed did not violate her constitutional right to due process under the Fourteenth Amendment. Michaels argues that the rationale of the district court, adopted from the Seventh

Circuit's holding in Buckley v. Fitzsimmons, 20 F.3d 789 (7th Cir. 1994), is flawed because it "leaves a Section 1983 Plaintiff, such as Michaels, without recourse."

In Buckley, the plaintiff brought S 1983 claims against police officers for allegedly coercing witnesses, and paying them money to make false statements against him, in order to implicate him in the crime for which he was tried. Id. at 794. The court held in Buckley that "[c]oercing witnesses to speak . . . is a genuine constitutional wrong" that violates "the right of the person being interrogated to be free from coercion." Id. The court further held, however, that the plaintiff could not "complain that the prosecutors may have twisted [the witness's] arm" because "[r]ights personal to their holders may not be enforced by third parties." Id. at 794-95 (citations omitted). The court in Buckley ruled that "using one person's coerced confession at another's trial violates his rights under the due process clause," but that "[p]rosecutors are entitled to absolute immunity for actions as advocates before the grand jury and at trial even if they present unreliable or wholly fictitious proofs." Id. at 795; see also Imbler v. Pachtman, 424 U.S. 409, 431 (1976) (holding that a prosecutor is entitled to absolute immunity from a civil suit for damages under S 1983 in initiating a prosecution and in presenting the state's case, including deciding which evidence to present).

Consistent with the analysis of the Seventh Circuit in Buckley, the district court in this matter held that the techniques used to interview the children during the course of the investigation did not violate Michaels's constitutional rights. The district court decided that Ms. Sencer-McArdle was entitled to absolute immunity in offering the unreliable evidence.

Michaels is correct in noting that such a rule leaves a plaintiff like herself without recourse. Indeed, the court in Buckley recognized this dilemma. 20 F.3d at 795 ("[T]he only way Buckley can establish a violation of the Constitution is to plead himself out of court."). The United States Supreme Court, in upholding absolute prosecutorial immunity, also noted that absolute prosecutorial immunity may "leave the genuinely wronged defendant without civil redress," but concluded that the policies served by granting

absolute prosecutorial immunity outweighed any gap in a plaintiff's recovery. See Imbler, 424 U.S. at 427. This court has acknowledged that a person harmed by the actions of a prosecutor would not be without any redress, because "[h]arm to a falsely-charged defendant is remedied by safeguards built into the judicial system – probable cause hearings, dismissal of the charges – and into the state codes of professional responsibility." Kulwicki v. Dawson, 969 F.2d 1454, 1464 (3d Cir. 1992).

Michaels suggests that a but for causation analysis would be more appropriate to resolving the issue of qualified immunity in this instance. To support this proposition, Michaels cites to the dissenting opinion in Buckley. The dissent in Buckley suggested that prosecutors are not immune from liability for their non-advocacy wrongful conduct if the plaintiff can demonstrate that the indictment and trial would not have occurred but for the wrongful conduct. 20 F.3d at 800 (Fairchild, J., dissenting). Judge Fairchild reasoned that the investigation techniques employed by the officers in Buckley were the same as manufacturing evidence and suborning perjury, actions that would be non-advocacy wrongful conduct. See id.

We are persuaded by the reasoning set forth in the majority opinion of Buckley. While we recognize that this rule may seem harsh to plaintiffs, we are satisfied that the remedies set forth in Kulwicki for a falsely-charged defendant are sufficient to discourage prosecutors from coercing witnesses to make unreliable statements against a defendant. Here, for example, Michaels's conviction was reversed and the serious charges against her were

dismissed because the children's testimony was unreliable.

Michaels also attempts to support her argument that her constitutional rights were violated by the improper techniques used to interview the children by relying on the decision in Clanton v. Cooper, 129 F.3d 1147 (10th Cir. 1997). Michaels asserts that the court in Clanton held that the plaintiff had standing to assert a constitutional violation of his rights based upon a witness's coerced confession. Citing Buckley, the court in Clanton held that "a person may challenge the government's use against him or her of a coerced confession given by another person." Id. at

8

1157–58 (emphasis added). It recognized a plaintiff's constitutional right not to have another person's coerced statement used against him in an affidavit for an arrest warrant. See id.

The distinction between Buckley and Clanton is the use of the improperly obtained statements. In Buckley, the witness's coerced testimony was presented at trial. The court held that the prosecutor was absolutely immune from an action for damages under S 1983 under Imbler. See 20 F.3d at 795. In Clanton, on the other hand, the police used another person's coerced confession in an affidavit to obtain an arrest warrant for Clanton. 129 F.3d at 1151. In using a coerced statement in this manner, the court held in Clanton that the officers were not entitled to qualified immunity. See id. at 1159; see also Malley v. Briggs, 475 U.S. 335, 343 (1986) (holding that an officer applying for a warrant without probable cause may be entitled to qualified immunity but is not entitled to absolute immunity). Here, the only use of the improperly obtained statements against Michaels was the presentation of the children's testimony before the grand jury and at the criminal trial. Until the children testified against her, Michaels's constitutional right to due process was not violated by the techniques used to interview the children.

The district court did not err in concluding that Michaels did not demonstrate a violation of her constitutional rights when the defendants employed improper interview techniques with the children. Thus, all of the defendants are entitled to qualified immunity for those acts. Furthermore, Ms. Sencer–McArdle is entitled to absolute immunity for offering the testimony of the children against Michaels before the grand jury in that trial.

III

Michaels also contends that she was denied the

opportunity to discover evidence as to the proper interview techniques for interviewing children regarding allegations of sexual abuse in order to demonstrate that the defendants violated her clearly established constitutional rights. Because we conclude that the questioning of the children

did not violate Michaels's constitutional rights, we need not consider this question. Furthermore, Michaels'sfinal contention, that the district court erred in dismissing her malicious prosecution S 1983 claim for failure to state a claim, is also unavailing. The district court properly dismissed her claims on the basis that the remaining defendants were entitled to immunity. Any discussion in the district court's order as to whether Michaels stated a S 1983 malicious prosecution claim was superfluous. The order granting summary judgment can be upheld without reaching the court's alternative basis for dismissing the action.

IV

The defendants are entitled to qualified immunity for their acts in interviewing the children because Michaels did not demonstrate a violation of her own constitutional rights. Ms. Sencer-McArdle is entitled to absolute immunity for presenting the children's testimony against Michaels before the grand jury and at trial. We therefore AFFIRM the order granting the defendants' motion for summary judgment and dismissing Michaels's federal claims.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit