No. 00–361. MICHAELS v. MCGRATH ET AL. C. A. 3d Cir. Certiorari denied.

JUSTICE THOMAS, dissenting.

Petitioner Margaret Michaels worked as a teacher's aide in a nursery school in Maplewood, New Jersey. Shortly after petitioner left the school, one of the children (then four years old) made a comment that a nurse in his pediatrician's office interpreted as an allegation of sexual abuse. See *State* v. *Michaels*, 264 N. J. Super. 579, 591, 625 A. 2d 489, 495 (1993). The physician examined the child but found no evidence of abuse. Nonetheless, based solely on the child's statements, a prosecutor and several investigators, respondents here, began an extensive investigation. Respondents interviewed virtually all of the children with whom petitioner could have had contact. Employing peer pressure, making threats, and asking leading or suggestive questions, they obtained stories of sexual abuse that "ranged from relatively minor accounts of touching to virtually incomprehensible heinous and bizarre acts." *Id.*, at 592, 625 A. 2d, at 495. After a 9-month trial petitioner was convicted of 115 counts and sentenced to 47 years in prison.

After petitioner had served five years of her sentence, a New Jersey appellate court reversed her conviction on the ground that respondents' investigative techniques were improper. See *id.*, at 620–635, 625 A. 2d, at 510–519. As the court noted, even respondents apparently realized that their interrogation techniques "caused certain children to use their imagination and stray from reality." *Id.*, at 621, 625 A. 2d, at 511. The New Jersey Supreme Court affirmed, holding that "the interviews of the children were highly improper and employed coercive and unduly suggestive methods." *State* v. *Michaels*, 136 N. J. 299, 315, 642 A. 2d 1372, 1380 (1994). It pointed out that "[t]he interrogations undertaken in the course of this case utilized most, if not all, of the practices that are disfavored or condemned by experts, law enforcement authorities and government agencies." *Id.*, at 313, 642 A. 2d, at 1379.

Petitioner then brought this action against respondents under Rev. Stat. § 1979, 42 U. S. C. § 1983. The District Court granted respondents' motion to dismiss, see *Michaels* v. *New Jersey*, 50 F. Supp. 2d 353 (NJ 1999), and the Third Circuit affirmed, 222 F. 3d 118 (2000). The Third Circuit held that recovery was

barred because the coercion of child witnesses was a violation only of the *witnesses'* rights, and not of any right held by petitioner. And although petitioner's due process rights were violated when the testimony was used at trial, the court held that the presentation of testimony fell squarely within the doctrine of absolute prosecutorial immunity. See *id.,* at 121–122, citing *Imbler* v. *Pachtman,* 424 U. S. 409 (1976).

This view accords with that of the Seventh Circuit, see *Buckley* v. *Fitzsimmons,* 20 F. 3d 789 (1994), but it is in tension with the approach taken by at least two other Circuits. See, *e. g., Clanton* v. *Cooper,* 129 F. 3d 1147 (CA10 1997); *Zahrey* v. *Coffey,* 221 F. 3d 342 (CA2 2000). In *Zahrey,* the Second Circuit took the position that a plaintiff does state a claim under § 1983 when he shows that prosecutorial misconduct in gathering evidence has led to a deprivation of his liberty. The intervention of a subsequent immunized act by the same officer does not break the chain of causation necessary for liability.

I believe that the Second Circuit's approach is very likely correct, and that the decision below leaves victims of egregious prosecutorial misconduct without a remedy. In any event, even if I did not have serious doubt as to the correctness of the decision below, I would grant certiorari to resolve the conflict among the Courts of Appeals on this important issue. I respectfully dissent.